CURRY and another, Assignees, etc., *v.* McCAULEY and others.

*(Circuit Court, W. D. Pennsylvania.* May 23, 1884.)

1. MORTGAGE—ASSAILABLE FOR CONSTRUCTIVE FRAUD—BANKRUPTCY—MORTGA-GEES' SURETIES ON BOND.

Where a mortgage is given to indemnify the mortgagees as sureties of a mortgagor on a bond, the consideration being legal and sufficient, it is only assailable for constructive fraud as a preference forbidden by the bankrupt law.

2. MORTGAGE—EXECUTION AND DELIVERY—COMPLETE TRANSACTION—VALIDITY.

When a mortgage is executed and delivered, nothing further is necessary to its validity as a complete transaction.

3. FRAUD ON CREDITORS—BANKRUPTCY PROCEEDINGS—MORTGAGE—FAILURE TO RECORD—TWO MONTHS LIMITATION.

Where a statute forbids a preference of creditors within two months prior to the commencement of bankruptcy proceedings, and a mortgage is given by the bankrupt long before the proceedings in bankruptcy, but is not recorded until within the two months prior to the commencement of such proceedings, there being no evidence of fraudulent intent in making it, the mortgage will not be declared fraudulent on account of the failure to previously record. *Blannerhasset* v. *Sherman*, 105 U. S. 100, distinguished.

3. BANKRUPT CREDITORS—BENEFIT—EQUITABLE INTEREST IN MORTGAGE.

Where a party has simply an equitable interest in a mortgage, a court will not establish an unwilling connection with it on her part, in order that a benefit may be conferred upon other creditors of a bankrupt.

4. COURT OF EQUITY—JURISDICTION—BANKRUPTCY—FAILURE TO ACCOUNT FOR MORTGAGE SECURITY.

Where a bankrupt act prescribes the mode of proceeding and the penalty, when the holder of a mortgage security refuses to account for it, a court of equity will not take jurisdiction of it.

5. SAME—ADEQUATE REMEDY AT LAW.

Where there is a remedy plain and adequate at law, a court of equity will not take cognizance of a claim.

In Equity. Appeal from the decree of the district court.

*Geo. M. Reade* and *Geo. Shiras, Jr.*, for appellants.

*B. L. Hewitt* and *S. Schoyer, Jr.*, for Mrs. Freed.

McKENNAN, J. Several distinct causes of complaint are conglomerated in this bill: (1) It is alleged that McCauley and Baker, two of the respondents, were sureties of the bankrupt in a bond given to Dr. Alexander Johnston, the executors of whose will transferred the same to his daughter, Mrs. Jane Freed; that some time after the execution of this bond the bankrupt executed and delivered to McCauley & Baker a mortgage upon the real estate described therein to indemnify them as his sureties in said bond; that the said mortgage was a fraudulent preference, and therefore praying that it be so declared, and ordered to be given up to be canceled. (2) It is further alleged that Mrs. Freed, being the owner of the bond aforesaid, and beneficially secured by the said mortgage, made proof of said bond as an unsecured claim against the bankrupt's estate, and presented the same as such at a general meeting of the bankrupt's creditors, and therefore praying that the proof of her claim be expunged, and she be ex-

cluded from participating in the distribution of the bankrupt's estate unless she shall renounce "all present and future claims and title to any benefit and advantage to be derived from said mortgage whatsoever." (3) And it is further alleged that John Lloyd entered into the possession and enjoyment of the mortgaged premises; and praying that an account be taken of the rents and profits of said premises during the period of his occupancy thereof.

Objectionable as this bill is, then, on account of its blending matters of independent and incongruous character, it has been fully discussed upon its merits, and hence it is not improper to consider and dispose of it in that aspect. The mortgage referred to in the bill was given to indemnify the mortgagees, as the sureties of the mortgagor, in a bond executed and delivered to Dr. Alexander Johnston on the first of May, 1874. It was therefore founded upon a legal and sufficient consideration, and, if assailable at all, it can only be for constructive fraud as a preference forbidden by the bankrupt law. The mortgage is dated May 8, 1875, and was recorded on the seventeenth of September, 1875; and although the bill alleges that it was antedated and was withheld from record in pursuance of a secret and unlawful agreement to that effect, yet these allegations are unsupported by sufficient proof. Hence, the point of time with reference to which the validity of the mortgage is to be determined is the eighth of May, 1875. But the bankruptcy proceedings were not commenced until November 11, 1875, so that the statutory limitation of two months within which the giving of a preference is forbidden had elapsed, and the mortgage was not open to question.

It is, however, urged that, as the mortgage was withheld from record until within two months from the filing of the petition in bankruptcy, the statutory period is to be computed from the date of recording. But when the mortgage was executed and delivered nothing further was necessary to its validity as a complete transaction. It has therefore been held in Pennsylvania, by a long series of decisions, that, as between the parties, a mortgage takes effect upon delivery, and that an unrecorded mortgage is good against an assignee for the benefit of creditors, the heirs of the mortgagor, and every one claiming under him who had notice of the mortgage before his rights attached. And it has been held by the supreme court that a preferential security must be obtained within the period prescribed by the bankrupt law to render it questionable, and that the acquisition of a lien, by placing it upon record within that period, will not subject it to the operation of the prohibitory provisions of the act. *Clark* v. *Iselin*, 21 Wall. 375, etc.; *Watson* v. *Taylor*, Id. 378. Nor are these and other decisions of the supreme court to the same effect overruled and changed by *Blennerhassett* v. *Sherman*, 105 U. S. 100. In that case the mortgage in question was held to be actually fraudulent, and therefore void at common law, because given in pursuance of "a premeditated and con-

trived purpose to deceive and defraud other creditors of the mortgagor." Almost the entire opinion of the court is taken up with a discussion of the evidence to demonstrate this, and, certainly, when this conclusion was reached, the pivotal question in the case was effectually disposed of; but it is added that "a mortgage, executed by an insolvent debtor with intent to give a preference to his creditor, who has reasonable cause to believe him to be insolvent, and knows it to be made in fraud of the provisions of the bankrupt act, and who, for the purpose of evading the provisions of that act, actively conceals and withholds it from record for two months, is void under the bankrupt act, notwithstanding the fact that it was executed more than two months before the filing of a petition in bankruptcy by or against the mortgagor." This must be understood as predicated of the special facts in the case, from which it was apparent that the mortgagor and mortgagee were animated throughout by "a premeditated and contrived purpose to deceive and defraud other creditors of the mortgagor." There is certainly no equivalent evidence of fraudulent intent in this case. The mortgage was delivered to the mortgagees without qualification, but with the unrestricted right on their part to record it whenever they thought proper to do so, and it was not recorded for over four months simply for the reason that they did not regard it as necessary for their protection to record it sooner. I am of opinion, therefore, that the validity of the mortgage cannot now be questioned.

Dr. Johnston died before the date of the mortgage, and neither his executors or Mrs. Freed, their assignee, are parties to it. They had no knowledge of its execution, and are not, therefore, privy to it in any sense. It was a transaction solely between the bankrupt and his sureties in the bond to Dr. Johnston, and was obviously intended to indemnify them as such sureties. One of its conditions is that the debt for which they were sureties should be paid by the bankrupt mortgagor. Hence it is claimed that Mrs. Freed stands in such a relation to the transaction as to furnish a foundation for the relief prayed against her. That Mrs. Freed is not a holder of the mortgage, in any legal sense, is clear, and whatever right in equity may be open to her to claim the benefit of it as a security for her debt held by the sureties for their indemnification, she cannot be compelled to assume the position of a holder of it. That is dependent upon her own option, guided solely by her irresponsible judgment as to what is best for her interests. She has not done anything to change her equitable relation to it, and the court cannot establish an unwilling connection with it on her part that a benefit may thereby be conferred upon the other creditors of the bankrupt. But if she were a holder of it as a security, the bankrupt act prescribes the mode of proceeding in such case, and the penalty for refusal to account for it. For this reason alone the prayer of the bill ought to be refused.

The claim set up against John Lloyd is not cognizable in equity.

His liability is purely legal, and the law furnished a plain and adequate remedy.

Upon the whole case the complainants are not entitled to the relief prayed, and the bill must be dismissed, with costs.